UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| DAVID FRANCO | CIVIL ACTION NO. 5:17-CV-00871 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| MABE TRUCKING CO., ET AL. | MAG. JUDGE KAREN L. HAYES |

MEMORANDUM ORDER

Pending here is Plaintiff David Franco's ("Franco") Motion in Limine to Prohibit Testimony and Opinions of Defendants' Accident Reconstructionist, William Miller [Doc. No. 135]. Defendants have filed an opposition [Doc. No. 143].

This case arises out of a motor vehicle accident. On or about November 24, 2015, Franco's vehicle was involved in a collision with an 18-wheel truck owned by Defendant Mabe Trucking Co., Inc., ("Mabe") and being driven by Defendant Richard Agee ("Agee") on Interstate 20 in Louisiana shortly after crossing the border between Texas and Louisiana. On November 22, 2016, Franco filed suit against Mabe in the United States District Court for the Eastern District of Texas, Marshall Division, alleging diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). On July 6, 2017, the suit was transferred to this Court. On May 3, 2018, Franco filed a Supplemental and Amended Complaint adding Agee and National Interstate Insurance Company as defendants.

Franco alleges that the accident was caused by the negligent operation of the Mabe truck by Agee in pulling onto Interstate 20 directly in front of him. Defendants contend the accident was caused solely by the negligence of Franco in not paying attention and rear-ending the Mabe truck. Thus, one of the issues to be presented to the jury is fault.

Franco's Motion in Limine requests exclusion of the opinion testimony of Defendants' expert in accident reconstruction, William Miller, on the basis that his expert opinions are irrelevant, inadmissible, and lack generally accepted scientific basis.

Federal Rule of Evidence 702 establishes the standards for admissibility of expert testimony to assist a trier of fact in understanding evidence or determining a fact in issue. In determining whether expert testimony is reliable and relevant, the district court's role in applying Rule 702 is that of a gatekeeper. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597-598, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596.

In determining whether to allow expert opinion testimony, the court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Federal Rule of Evidence 402, but also in the sense

that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Services, Inc.,* 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert,* 509 U.S. at 591-92).

As to reliability, Rule 702 only authorizes the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Expert testimony requires more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590.

Franco objects to Mr. Miller's testimony on three grounds: (1) Mr. Miller did not perform a "lead vehicle analysis;" (2) Mr. Miller's "context clues" are irrelevant; and (3) Mr. Miller should not be permitted to speculate as to the reason for Franco's alleged distraction prior to impact.

Franco contends that several studies have confirmed the difficulty following drivers have in determining closing speeds and responding to a slow-moving lead vehicle. He asserts that the seminal paper on lead vehicle detection analysis is entitled, "Relationship Between Relative Velocity Detection and Driver Response Times in Vehicle Following Situations" and authored by Jeffrey W. Muttart (the "Muttart Paper").

Franco states that Dr. Muttart is an expert in accident reconstruction and human factors, and his research and methodologies are generally accepted in the field. Further, according to Dr. Muttart, the generally accepted methodology in reconstructing rear-end collisions is a lead vehicle detection analysis. Therefore, Franko concludes that a reconstructionist *must* perform a lead vehicle detection analysis.

Franco asserts that Mr. Miller did not perform a lead vehicle detection analysis, and, as such, Mr. Miller's conclusions are based upon faulty methodologies and unsupported assumptions, and this Court should prohibit Defendants from offering these opinions to the jury.

Additionally, Dr. Muttart's lead vehicle analysis permits the consideration of context clues in reconstructing a rear-end collision. Context clues are objects in or near the roadway and in the following driver's cone of vision that may assist the driver in determining the relative speed of the lead vehicle.

Mr. Miller opined that the following objects were context clues for Franco: a slight curve in the roadway, trees to the right of the roadway, a highway sign, a parking lot, the uphill grade of the roadway, and a FedEx truck traveling in the left lane. Yet in his deposition, Mr. Miller "backed off" these context clues as being relevant considerations for the following driver in this case. Therefore, Franco argues that Mr. Miller's assertions would confuse or mislead the jury.

Finally, Franco contends that Mr. Miller should not be allowed to speculate as to the reason for Franco's alleged distraction prior to impact, as he stated in his deposition that he had not seen any evidence of any alleged distraction and he confirmed that such speculation would be "outside of [his] bailiwick." [Doc. No. 135-3, p. 23].

Defendants respond that a "lead vehicle analysis" is apparently a "scientifically" based excuse created by so-called human factors experts to allow individuals like Franco a basis to seek monetary compensation through a court for rear-ending other drivers.

Defendants further argue that Mr. Miller considered all the facts at issue in this case and determined Franco's statement to the investing officer that he saw the Mabe truck come off the shoulder negates the need for any lead vehicle analysis.

4

Defendants additionally assert that, despite the above, Mr. Miller performed not one but two (2) lead vehicle analyses and still found that Franco failed to control his speed and failed to keep a proper lookout. Both actions were the underlying causes of this wreck, according to Defendants, and Franco should have reacted to the Mabe vehicle within three seconds.

With regard to the "context clue" considerations, Defendants assert that the testimony of Mr. Miller which Franco attacks relates to Mr. Miller's determination that a lead vehicle analysis is not appropriate since Franco saw the Mabe vehicle enter the freeway from the shoulder and knew it was travelling more slowly. Defendants assert that Mr. Miller clearly opined about and identified relevant context clues in his report and discussed them at this deposition. To the extent that Franco disagrees with Mr. Miller's analysis of what is and what is not a proper context clue, Defendants argue Franco's counsel can examine Mr. Miller on that issue during trial.

The Court finds that Mr. Miller is qualified to testify as an expert and that his opinions and methodology are sufficiently relevant and reliable. Despite Mr. Miller's issues with the lead vehicle analysis and its applicability to the facts of this case, he did perform two lead vehicle analyses. The Court agrees with Defendants that Franco's challenges are more appropriate subjects for "vigorous cross-examination."

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Franco's Motion in Limine [Doc. No. 135] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' request for fees and costs is also **DENIED**.

Monroe, Louisiana, this 6th day of March, 2019.

                                                            **TERRY A. DOUGHTY**
                                                         **UNITED STATES DISTRICT JUDGE**