# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| DAVID FRANCO | CIVIL ACTION NO. 5:17-CV-00871 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| MABE TRUCKING CO., ET AL. | MAG. JUDGE KAREN L. HAYES |

## MEMORANDUM ORDER

Pending here is Plaintiff David Franco's ("Franco") Motion in Limine to Prohibit Testimony and Opinions of Defendants' DOT Compliance Expert, Lane VanIngen [Doc. No. 134]. Defendants have filed an opposition [Doc. No. 145].

This case arises out of a motor vehicle accident. On or about November 24, 2015, Franco's vehicle was involved in a collision with an 18-wheel truck owned by Defendant Mabe Trucking Co., Inc., ("Mabe") and being driven by Defendant Richard Agee ("Agee") on Interstate 20 in Louisiana shortly after crossing the border between Texas and Louisiana. On November 22, 2016, Franco filed suit against Mabe in the United States District Court for the Eastern District of Texas, Marshall Division, alleging diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). On July 6, 2017, the suit was transferred to this Court. On May 3, 2018, Franco filed a Supplemental and Amended Complaint adding Agee and National Interstate Insurance Company as defendants.

Franco alleges that the accident was caused by the negligent operation of the Mabe truck by Agee in pulling onto Interstate 20 directly in front of him. Defendants contend the accident was caused solely by the negligence of Franco in not paying attention and rear-ending the Mabe truck. Thus, one of the issues to be presented to the jury is fault.

Franco's Motion in Limine requests exclusion of the opinion testimony of Defendants' expert, Lane VanIngen, on the basis that his opinions are either wholly irrelevant or fall outside the scope of "DOT Compliance," his stated field of expertise.

Federal Rule of Evidence 702 establishes the standards for admissibility of expert testimony to assist a trier of fact in understanding evidence or determining a fact in issue. In determining whether expert testimony is reliable and relevant, the district court's role in applying Rule 702 is that of a gatekeeper. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597-598, (1993). However, as gatekeeper, the district court is not intended to replace the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 596).

In determining whether to allow expert opinion testimony, the court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. *See Moore v. Ashland Chemical, Inc.,* 126 F.3d 679, 684 (5th Cir. 1997). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods,* 163 F.3d 935 (5th Cir. 1999).

If a witness is qualified to testify, the court must then determine whether the proffered testimony is both relevant and reliable. "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Federal Rule of Evidence 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact

in issue." *Bocanegra v. Vicmar Services, Inc.,* 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert,* 509 U.S. at 591-92).

As to reliability, Rule 702 only authorizes the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Expert testimony requires more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590.

Defendants have retained Lane VanIngen to provide expert opinions in "DOT Compliance." Franco objects to six (6) conclusions contained in Mr. VanIngen's report of November 27, 2018:

1. Mabe Trucking Co. Inc., C&C Asset Management LLC, and FedEx Ground Package System Inc. are USDOT regulated motor carriers, and each commercial motor vehicle driver, was subject to the Federal Motor Carrier Safety Regulations (hereinafter referred to as the FMCSRs) on November 24, 2015, the date of the crash that is the basis for this case.

2. Mabe Trucking Co Inc.'s motor carrier operation is managed in a reasonably compliant manner with all applicable sections of the FMCSR's.

3. Richard A. Agee was qualified to operate a commercial motor vehicle and the selection of Richard A. Agee as a commercial motor vehicle driver by Mabe Trucking Co. Inc., was reasonable and completed in accordance with FMCSA rules and regulations.

4. Based on the information provided, Richard A. Agee was not in violation of any local, state, or federal laws/regulations governing the safe operation of a commercial motor vehicle.

5. David Franco's testimony and medical records indicate he failed to comply with the regulatory requirements of the FMCSRs.

6. David Franco's previous crash history demonstrates a troubling pattern of rear-end collisions and FMCSA's crash preventability guidelines provide guidance on determining preventability when "Striking Other Vehicle in Rear."

**Conclusion No. 1**

Franco asserts that all parties agree that the motor carriers involved in this wreck are subject to the FMSCR, and, thus, no expert opinion is necessary.

Defendants respond that it is important for the jury to understand all motor carriers involved in this accident, including Franco's employer for which he was driving at the time of the accident, had certain obligations under the USDOT guidelines, and then to discuss what those guidelines are and how they affect the various parties to this case. Without this initial determination, the remainder of Mr. VanIngen's opinions are confusing.

The Court finds the testimony is relevant and DENIES the motion in limine as to this conclusion.

**Conclusion No. 2**

Franco argues that Mabe's prior safety audits and ratings are irrelevant, in view of this Court's prior ruling limiting Franco's claims against Mabe to vicarious liability only for the negligence of its employee, Agee. [Doc. Nos. 101, 102]. Additionally, Franco argues that Mr. VanIngen's conclusion attempts to paint Mabe as a large, safe trucking company based upon a 2012 safety audit and Mabe's general proficiency in passing roadside inspections, statistics that are completely unrelated to the subject accident. As such, this testimony would only serve to waste the jury's time and confuse the issues to be decided.

Defendants respond that Mr. VanIngen's opinions are still relevant if Franco attempts to paint Mabe as an unsafe company, which Defendants say is highly likely. Further, Mr. VanIngen's opinion that Mabe is managed in a reasonably compliant manner is relevant to show Mabe hires safe drivers.

The Court finds the testimony is relevant and DENIES the motion in limine as to this conclusion.

**Conclusion No. 3**

Franco contends that Mr. VanIngen is merely opining that Agee meets the bare minimum qualifications to become a commercial motor vehicle operator, which Franco contends he also meets. Having Mr. VanIngen state his expert opinion that both drivers met the minimum federal standards would only mislead and/or confuse the jury on whether either driver's acts or omissions constituted negligence. Thus, his conclusion is unhelpful at best, misleading at worst, and must be rejected.

Defendants respond that Franco's case has been substantially based on Agee's allegedly unsafe driving or lack of knowledge of Franco's "reptile theory-based" questions related to general safety issues. Mr. VanIngen's opinion that Agee is and was at the time of this accident a qualified commercial driver is therefore relevant to counter Franco's argument to the contrary. Further, if Franco wants to claim these federal requirements are the "bare minimum," that is his prerogative at trial. However, this does not change the fact Mr. Agee was qualified to drive as a commercial driver on the date of the subject accident.

The Court finds the testimony is relevant and DENIES the motion in limine as to this conclusion.

**Conclusion No. 4**

Franco asserts that Mr. VanIngen is not a Louisiana judge, lawyer, or police officer. He has no training or formal education in Louisiana law enforcement, accident investigation, or legal interpretations. Lisa Hopkins, on the other hand, was the investigating officer in this accident, and she noted a violation of "improper starting" for Agee. Franco argues that,

5

considering Mr. VanIngen's qualification dearth in the field of Louisiana law and enforcement, he must defer to Officer Hopkin's findings, yet he categorically rejected her findings.

Franco further argues that Mr. VanIngen "chose to split the finest of hairs" when he opined that Agee did not violate federal law by not putting on his flashers when stopped on the shoulder of the highway, because the federal regulation applied only to safe "operational" law and sitting stopped on the shoulder of the highway is not "operating." [Doc. No. 134-1, p. 6]. Franco concludes that this "word selection game" would mislead the jury on the actual evidence, and, thus, Mr. VanIngen's conclusion is disingenuous and ignores the best evidence.

Defendants respond that Franco's entire case is based on leading and hypothetical questions asked of Officer Hopkins in an attempt to argue Mr. Agee somehow violated the law, [Doc. No. 134-1, p. 5-6], and that this appears to be Franco's primary focus in this case, despite the fact this Court has already determined *negligence per se* is not recognized in the State of Louisiana. [Doc. No. 122].

Further, Defendants argue Officer Hopkins is not an expert and cannot testify as to hypotheticals. Mr. VanIngen, however, is an expert and can testify regarding whether there were any violations of applicable legal standards, including the laws of Louisiana to the extent he is able.

Additionally, Defendants assert that Franco's entire case hinges on Louisiana's general speed law which prohibits a vehicle traveling so slowly as to impede traffic. This accident happened on a two-lane state highway while Agee was accelerating. Therefore, Defendants argue that Franco's position is specious when Franco himself was driving too fast and distracted.

Defendants also assert that Mr. VanIngen's opinions focus on Franco's continued complaints that Agee should have been using his flashers while on the shoulder of the road or

while accelerating in the slow lane of travel on I-20. Mr. VanIngen opines there is no requirement under state or federal law that requires the use of flashers while accelerating on the highway, which is relevant.

Further, Mr. VanIngen disputes the allegation that Agee improperly "started" while coming off the shoulder of the highway. Mr. VanIngen opines that Agee was accelerating in the right lane of travel, had established his right of way, and was well past the point of starting when Franco struck the Mabe tractor-trailer, all of which are also relevant to Defendants' defenses in this case.

The Court finds the testimony is relevant and DENIES the motion in limine as to this conclusion.

**Conclusion No. 5**

Mr. VanIngen noted in his report that Franco had carpal tunnel syndrome and suffered from sleep apnea at the time of the accident, but these conditions do not appear to be disclosed on Franco's DOT medical form. Franco asserts that Mr. VanIngen made no effort to contact the medical examiners who approved Franco for duty to determine whether such conditions had actually been disclosed.

Franco further asserts that Mr. VanIngen is not a medical doctor nor an accident reconstructionist, and thus he is unable to render an opinion whether Franco's medical conditions caused or contributed to the subject accident. The medical examiners would be the best witnesses to say whether these conditions were disclosed and/or impacted Franco's ability to drive safely. Therefore, Mr. VanIngen's fifth conclusion is nothing more than a red herring that would likely mislead and confuse the jury.

Defendants respond that this testimony is important to show Franco was driving as a commercial driver without disclosing medical issues, such as sleep apnea and other health issues. Thus, according to Defendants, the testimony establishes two things: Franco has lied on his required disclosures, drawing into question his veracity; and, Franco likely should not have been driving a commercial vehicle at the time of this accident. Defendants argue these issues are clearly relevant here, Mr. VanIngen's opinions are valid, and Franco can attack his opinions on cross-examination.

The Court finds the testimony is relevant and DENIES the motion in limine as to this conclusion.

**Conclusion No. 6**

Franco argues that Louisiana appellate courts have consistently held that evidence of one's prior accidents is inadmissible; therefore, Mr. VanIngen's final conclusion is a thinly veiled attempt to backdoor evidence that is clearly inadmissible.

Defendants respond that Mr. VanIngen opines that Franco's previous and subsequent rear-end accidents are a serious cause for concern and show Franco's lack of compliance with the training he allegedly received as a commercial driver as well as his licensing by the State of Texas. Franco has at least four rear-end accidents, and the instant case involves the third accident.

Defendants contend further, that under Louisiana law, the parties seeking to introduce evidence of prior accidents must show that the prior accidents involve substantially the same circumstances or conditions which caused the accident at issue. *Lee v. Mo. Pac. R.R.*, 566 So. 2d 1052, 1055 (La. App. 2nd Cir. 1990). Mr. VanIngen opines that these accidents are all rear-end accidents where Franco himself struck the rear of other vehicles. According to Defendants, these

accidents are clearly relevant and involve substantially the same circumstances or conditions as the accident which is the basis of this suit. Accordingly, Mr. VanIngen's opinion that these accidents are a cause for concern and show Franco's non-compliance with his training and licensing are valid and admissible.

The Court notes that the admissibility of evidence regarding other accidents of Franco is the subject of other pending motions [Doc. Nos. 130, 138]. Therefore, the Court will defer ruling on this issue.

Accordingly, for the foregoing reasons,

**IT IS ORDERED THAT** Franco's Motion in Limine [Doc. No. 134] is **DENIED** as to Conclusion Nos. 1 - 5. The Court will **DEFER** ruling on Conclusion No. 6.

Monroe, Louisiana, this 8th day of March, 2019.

_____
**TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE**